**Opinion issued July 11, 2013**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-12-00992-CV

———————————

## TEXAS FARM BUREAU UNDERWRITERS AND TEXAS FARM BUREAU INSURANCE, APPELLANTS

## V.

## DOUGLAS RASMUSSEN AND KATHY RASMUSSEN, APPELLEES

---

**On Appeal from the 239th District Court**
**Brazoria County, Texas**
**Trial Court Cause No. 53818**

---

## O P I N I O N

A fire destroyed a rental property owned by Douglas and Kathy Rasmussen. The Texas Farm Bureau Insurance Company denied the Rasmussens' property insurance claim because the Rasmussens had failed to pay the insurance premium due for the renewal of that policy six months before the fire occurred.  The

Rasmussens sued Texas Farm Bureau and Fred Bolton, a Texas Farm Bureau agent, for breach of contract and Texas Insurance Code violations. A jury found for the Rasmussens, and awarded $40,000 in damages. The trial court entered judgment in favor of the Rasmussens and against Texas Farm Bureau. Throughout the proceedings, Texas Farm Bureau sought judgment as a matter of law on the basis that Rasmussens had no insurance policy in effect that covered their claim.

Texas Farm Bureau appeals the judgment, challenging the legal sufficiency of the evidence to support the jury's findings that (1) a policy was in place at the time of the fire, (2) Texas Farm Bureau breached that policy, and (3) Texas Farm Bureau made untrue or misleading statements of fact in violation of the Texas Insurance Code. Because no insurance policy was in effect at the time of the fire, we hold that legally insufficient evidence supports the jury's liability findings and the trial court thus erred in denying Texas Farm Bureau's motions for judgment as a matter of law. We reverse and render a take-nothing judgment.

## Background

The Rasmussens owned a rental house located at 111 Primrose, in Lake Jackson, Texas. Beginning in 2006, the Rasmussens insured the house with Texas Farm Bureau. To encourage a shift in their insurance provider, Bolton told the Rasmussens that he would take care of the Rasmussens' insurance needs, provide more personalized service, and notify them of any changes to their policies.

2

The Rasmussens renewed the policy that covered the rental home in June 2007. They paid the premium for the term of June 1, 2007 to June 1, 2008. They did not pay the premium when it was again due in June 2008. In January 2009, the fire occurred. The Rasmussens submitted an insurance claim, but the Texas Farm Bureau denied it.

At trial, Texas Farm Bureau proffered evidence and testimony that it had mailed a renewal notice for the policy and a demand for the premium, to cover the term June 1, 2008 to June 1, 2009. It adduced further evidence that it had sent a final notice stating that the premium was past due, and that if the Texas Farm Bureau did not receive the amount due by June 18, "all coverage afforded by this policy expired 12:01 A.M., 06-01-08."

The Rasmussens testified that they had never received either of these notices, and they were unaware that a premium was due. Bolton never notified the Rasmussens about the expiration of the policy. The Rasmussens conceded at trial that they had never paid a premium for the June 2008 to June 2009 term.

**Discussion**

## I.      Standard of review

In conducting a legal sufficiency review, we review the evidence presented below in a light most favorable to the jury's verdict, crediting favorable evidence if reasonable jurors could and disregarding contrary evidence unless reasonable

jurors could not. *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 770 (Tex. 2010); *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). In reviewing Texas Farm Bureau's challenge to the verdict in favor of the Rasmussens, we set aside that verdict only if the evidence at trial would not enable reasonable and fair-minded people to reach the verdict under review. *See City of Keller*, 168 S.W.3d at 827. The evidence is legally insufficient if (a) there is a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence establishes conclusively the opposite of the vital fact. *See City of Keller*, 168 S.W.3d at 810; *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003).

## II.    Expiration of Coverage

Texas Farm Bureau first contends that legally insufficient evidence supports the jury's finding that an insurance policy was in place at the time of the fire. We construe an insurance policy according to the rules of contract construction. *See Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003). Our primary concern in interpreting a policy is to ascertain and to give effect to the parties' intentions as expressed in the document. *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006); *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 311–12 (Tex. 2005). We construe contracts to

4

avoid a construction that is unreasonable, inequitable, or oppressive. *Frost Nat'l Bank*, 165 S.W.3d at 312. If, after applying the pertinent rules of construction, the policy has a definite legal meaning, then it is unambiguous, and we construe it as a matter of law. *Id.*; *Schaefer*, 124 S.W.3d at 157. If, in contrast, after applying the rules of construction, a contract term is ambiguous, then we construe it in favor of the insured. *See Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 746 (Tex. 2006); *Archon Invs., Inc. v. Great Am. Lloyds Ins. Co.*, 174 S.W.3d 334, 338 (Tex. App.—Houston [1st Dist.] 2005, pet denied).

An insurance policy constitutes a contract for a period of time covered by the contract. *See Hartland v. Progressive Cnty. Mut. Ins. Co.*, 290 S.W.3d 318, 322 (Tex. App.—Houston [14th Dist.] 2009, no pet.); *Zuniga v. Allstate Ins. Co.*, 693 S.W.2d 735, 738 (Tex. App.—San Antonio 1985, no writ); *Harrington v. Aetna Cas. & Sur. Co.*, 489 S.W.2d 171, 176 (Tex. Civ. App.—Waco 1972, writ ref'd n.r.e.). To renew a contract, the offer by the insurer to renew must be accepted by the insured completely and unequivocally. *Hartland*, 290 S.W.3d at 322. Thus, the payment of the insurance premium in accordance with the provisions of the insurance policy is generally a condition precedent to establish liability against the insurer. *Id.*; *Walker v. Federal Kemper Life Assur. Co.*, 828 S.W.2d 442, 449 (Tex. App.—San Antonio 1992, writ denied). If the insured fails to meet this condition, then the policy expires. *Southland Life Ins. Co. v. Hopkins*, 244 S.W. 989, 990

(Tex. Comm'n App. 1922, judgm't adopted) (holding failure to pay premium "would ipso facto terminate all liability" under insurance policy); *Hartland*, 290 S.W.3d at 322; *see Walker*, 828 S.W.2d at 447; *Zuniga*, 693 S.W.2d at 738.

The Rasmussens' insurance policy for the rental home applies to losses that occur during the policy period. Coverage under the policy is conditioned on the receipt of the premium. The Rasmussens admittedly did not pay the premium for the June 2008 to June 2009 term. Accordingly, the Rasmussens' insurance policy expired by its own terms in June 2008, six months before the fire. *See Hopkins*, 244 S.W. at 990; *Hartland*, 290 S.W.3d at 322; *Walker*, 828 S.W.2d at 447; *Zuniga*, 693 S.W.2d at 738.

The Rasmussens respond that their policy automatically renewed upon its expiration, because Texas Farm Bureau failed to give them thirty days' notice of non-renewal. They rely on section 551.105 of the Texas Insurance Code, which provides:

> Unless the insurer has mailed written notice of nonrenewal or renewal with written notice of change in coverage as provided by Section 2002.001 to the insured not later than the 30th day before the date on which the insurance policy expires, an insurer must renew an insurance policy, at the request of the insured, on the expiration of the policy.

TEX. INS. CODE ANN. § 551.105 (West Supp. 2012). The insurance policy mirrors section 551.105:

> If we refuse to renew this policy, we must deliver to you, or mail to you at your mailing address . . . written notice of refusal to renew not later than the 30th day before the date in which this policy expires. Proof of mailing will be sufficient proof of notice. If we fail to give you proper notice of our decision to refuse renewal, you may require us to renew the policy.

Neither provision, however, provides for renewal of an insurance policy when the insured fails to pay the premium. Absent a timely notice of nonrenewal by the insurance carrier, the insured has an option to renew the policy that the insurer may not refuse. *See* TEX. INS. CODE ANN. § 551.105. Such a renewal must be at the request of the insured: "an insurer must renew an insurance policy, at the request of the insured, on the expiration of the policy." *Id.*; *see Tex. Specialty Underwriters, Inc. v. Tanner*, 997 S.W.2d 645, 648–49 (Tex. App.—Dallas 1999, pet denied) (interpreting predecessor provision to provide insured with option to renew its policy if insurer does not provide thirty days' notice of nonrenewal). This provision does extend the policy, however, if the insured does not accept the offer of renewal by payment of the premium due.

The Rasmussens rely on *Trinity Universal Insurance Co. v. Burnette* to contend that section 551.105 provides for automatic renewal even absent payment of any premium, but the Beaumont Court of Appeals in that case declined to address the effect of an insured's failure to pay premiums. 560 S.W.2d 440, 442

7

n.3 (Tex. Civ. App.—Beaumont 1977, no writ) ("None of the parties have made mention of the failure of plaintiffs to pay or to tender the premiums due on the policy, and we do not reach the question sua sponte."). In contrast to *Burnette*, the central issue in this case is the effect of an insured's failure to pay the premium, which is a condition for coverage under the policy.

The Rasmussens direct us to the Texas Farm Bureau's notice that the premium was due and the renewal policy that Texas Farm Bureau issued before the Rasmussens' prior policy expired. The renewal policy covered the June 2008 to June 2009 term. The notice and renewal policy, however, are an offer to provide renewed coverage upon payment of the renewal premium and, without payment, do not constitute a binding agreement. *See Hartland*, 290 S.W.3d at 372 (holding renewal of an insurance policy constitutes a separate and distinct contract that must be accepted by payment of premium); *see also Harrington*, 489 S.W.2d at 176 (holding policy delivered to insured on expiration is generally offer which must be accepted before renewal is effective). The premium notice provides: "please pay amount due on or before date due," noting a price of $499.00 due on June 1, 2008. And the renewal policy provides that it is conditioned on payment of the premium: "We will provide the insurance described in this policy in return for the premium." Nothing in the record suggests that the Rasmussens attempted to pay the premium owed to accept the offer or otherwise renewed the policy in exercise of their option

under section 551.105. Nor does any evidence suggest that Texas Farm Bureau refused to renew. Although the Rasmussens respond that they would have renewed the policy had they known it had expired and received the offer, unexpressed intent is insufficient to express assent to an agreement. *See Angelou v. African Overseas Union*, 33 S.W.3d 269, 278 (Tex. App.—Houston [14th Dist.] 2000, no pet.) ("Unexpressed subjective intent is irrelevant."). Because the Rasmussens did not pay the premium due for the June 2008 to June 2009 term, the policy expired more than six months before the fire occurred. *See Hartland*, 290 S.W.3d at 322.

The Rasmussens further respond that Texas Farm Bureau employees have described the insurance as "cancelled," rather than "expired," and that such a description estops Texas Farm Bureau from contending that the policy had "expired." Essentially, they contend that the employees' statements created insurance coverage by estoppel. The Texas Supreme Court has long held, however, that the "doctrine of estoppel cannot be used to create insurance coverage when none exists by the terms of the policy." *Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 203 (Tex. 2004); (quoting *Tex. Farmers Ins. Co. v. McGuire*, 744 S.W.2d 601, 602–03 (Tex. 1988)); *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 787 (Tex. 2008).

The Rasmussens also note that they never received any renewal notices, regardless of whether the Texas Farm Bureau sent them. An insurer, however, has

no obligation to inform an insured about a delinquent premium. *See MacIntire v. Armed Forces Benefit Ass'n*, 27 S.W.3d 85, 93 (Tex. App.—San Antonio 2000, no pet.) (holding that insurer had no duty under Insurance Code to notify insured of delinquent premium); *Shindler v. Mid-Continent Life Ins. Co.*, 768 S.W.2d 331, 333 (Tex. App.—Houston [14th Dist.] 1989, no writ) (holding that insurer had no duty to notify insured that premiums were due under common law or Insurance Code).

As a matter of law, the policy expired in June 2008 due to non-payment of the premium then due. The jury's finding that an insurance contract was in place at the time of the fire is not supported by legally sufficient evidence. *See City of Keller*, 168 S.W.3d at 810. We hold that the trial court erred in failing to grant Texas Farm Bureau's motions for directed verdict or for judgment notwithstanding the verdict on the Rasmussens' claim for breach of contract.

## III. Insurance Code Violations

The Rasmussens brought claims under Texas Insurance Code sections 551.104 for improperly cancelling the policy, 541.060 for unfair claims settlement practices, 541.051 for misrepresenting terms, benefits, or advantages it would provide under the policy, and 541.061 for misrepresenting benefits supplied by the policy. Because the policy expired when the Rasmussens failed to pay the premium due, Texas Farm Bureau was not required to cancel the policy under section

551.104. *See* TEX. INS. CODE ANN. §551.104 (West 2009); *Zuniga*, 693 S.W.2d at 738 (holding insurer not required to renew coverage absence payment of renewal premium nor obligated to comply with cancellation procedures). Similarly, section 541.060 liability for unfair claim settlement practices applies only to covered claims. *Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 77 S.W.3d 253, 261 (Tex. 2002); *Progressive C'nty Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919, 922 (Tex. 2005). No evidence supports the Rasmussens' claims under 551.104 and 541.060. *See id*.

To prevail in a claim under section 541.061, the insured must show that the insurer made untrue statements about coverage, or that the insurer failed to disclose material information about an insurance policy provision. TEX. INS. CODE ANN. § 541.061 (West 2009) (creating liability for an insurer that misrepresents policy coverage); *see also Texas Mut. Ins. Co. v. Morris*, 383 S.W.3d 146, 150 (Tex. 2012) (holding misrepresentation must be about what policy says or what policy covers to recover under section 541.061); *Texas Mut. Ins. Co. v. Ruttiger*, 381 S.W.3d 430, 446 (Tex. 2012) (holding insufficient evidence existed to support section 541.061 claim when plaintiff showed no evidence of an "untrue statement made by [insured] regarding the policy or any statement about the policy that misled [the plaintiff]"). A section 541.061 claim requires evidence that the insurer denied coverage under circumstances that it previously had represented would be

covered. *See* TEX. INS. CODE ANN. § 541.051 (West 2009) (creating liability for an insurer that misrepresents the terms, benefits, or advantages of a policy); *see Morris*, 383 S.W.3d at 150. Section 541.051 similarly requires evidence that the insurer misrepresented the terms or benefits of the policy. *See* TEX. INS. CODE ANN. § 541.051.

The Rasmussens presented evidence that Bolton told them in 2006 that he would "take care of [the Rasmussens'] insurance needs" and would "inform [them] of any changes to [their] policy." Bolton emphasized to the Rasmussens that he was a local agent who would be more responsive than other insurance providers. Because Bolton's statements do not reflect the terms or benefits of the policy, however, they are not actionable under section 541.051. *See Morris*, 383 S.W.3d at 150 (holding that liability under section 541.061 requires misrepresentation about policy coverage); *Ruttiger*, 381 S.W.3d at 446 (same). Bolton's statements do not express or imply that coverage would continue even if the Rasmussens did not purchase or renew the coverage through payment of the premium due. Absent such evidence, the jury's finding that Texas Farm Bureau violated Texas Insurance Code sections 541.051 and 541.061 is unsupported by legally sufficient evidence. *See Morris*, 383 S.W.3d at 150; *City of Keller*, 168 S.W.3d at 810.

## Conclusion

Because the insurance policy had expired six months' earlier due to non-payment of premium, none of the Rasmussens' claims for policy coverage has merit.[1] Accordingly, we reverse the judgment of the trial court and render a take nothing judgment.



Jane Bland
Justice

Panel consists of Justices Jennings, Bland, and Massengale.

---

[1] Given our disposition, we do not address Texas Farm Bureau's remaining challenges to the trial court's judgment.